619 So.2d 294 (1993)
Eric Arnaz ASHLEY, Petitioner,
v.
STATE of Florida, Respondent.
No. 80174.
Supreme Court of Florida.
June 3, 1993.
Robert J. Becerra of Raskin & Raskin, P.A., Miami, and Michael H. Tarkoff, Coconut Grove, for petitioner.
Robert A. Butterworth, Atty. Gen., Joan Fowler, Sr. Asst. Atty. Gen., Bureau Chief, and Georgina Jimenez-Orosa, Asst. Atty. Gen., West Palm Beach, for respondent.
OVERTON, Justice.
We have for review State v. Ashley, 601 So.2d 1230 (Fla. 4th DCA 1992), based on conflict with Amaya v. State, 580 So.2d 885 (Fla. 2d DCA 1991). In Ashley, the Fourth District Court of Appeal held that an unloaded firearm carried in a private motor vehicle was "readily accessible for immediate use" for purposes of securing a conviction under section 790.01(2), Florida Statutes (1989) (unlawfully carrying a concealed weapon), even though no ammunition was found in the vehicle. In Amaya, the Second District Court held that an unloaded firearm was not "readily accessible for immediate use" for purposes of the statute although ammunition for the firearm was contained in the vehicle in which the firearm was carried. We have jurisdiction,[1] *295 and we quash the district court's decision in Ashley. We also disapprove the Second District Court of Appeal's decision in Amaya because we find that an unloaded firearm located under the passenger's seat of a vehicle is readily accessible for immediate use when ammunition for that firearm is lying in open view on the passenger's seat.
The pertinent statutory provisions concerning the issue in this case are sections 790.01(2), Florida Statutes (1989), 790.25(5), Florida Statutes (Supp. 1990), and 790.001(15), Florida Statutes (Supp. 1990). Those provisions read as follows:
(2) Whoever shall carry a concealed firearm on or about his person shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
§ 790.01(2), Fla. Stat. (1989).
(5) POSSESSION IN PRIVATE CONVEYANCE.  Notwithstanding subsection (2), it is lawful and is not a violation of s. 790.01 to possess a concealed firearm or other weapon for self-defense or other lawful purpose within the interior of a private conveyance, without a license, if the firearm or other weapon is securely encased or is otherwise not readily accessible for immediate use. Nothing herein contained prohibits the carrying of a legal firearm other than a handgun anywhere in a private conveyance when such firearm is being carried for a lawful use. Nothing herein contained shall be construed to authorize the carrying of a concealed firearm or other weapon on the person. This subsection shall be liberally construed in favor of the lawful use, ownership, and possession of firearms and other weapons, including lawful self-defense as provided in s. 776.012.
§ 790.25(5), Fla. Stat. (Supp. 1990) (emphasis added).
(15) "Readily accessible for immediate use" means that a firearm or other weapon is carried on the person or within such close proximity and in such a manner that it can be retrieved and used as easily and quickly as if carried on the person.
§ 790.001(15), Fla. Stat. (Supp. 1990).
In this case, the police stopped Ashley for speeding. While conducting a search incident to a lawful arrest, the police discovered an unloaded firearm in the floorboard area of the right front passenger's seat. No ammunition for the weapon was discovered in the vehicle. On these facts, Ashley was charged with unlawfully and knowingly carrying on or about his person a concealed firearm in violation of section 790.01(2).
Subsequent to his arrest, Ashley filed a sworn motion to dismiss, claiming that he fell within the exception to the prohibition against carrying a concealed weapon contained in section 790.25(5). Ashley, relying on the Second District Court's decision in Amaya, claimed that the firearm in his vehicle was not "readily accessible for immediate use" because it was unloaded and because no ammunition was contained in the vehicle. In reaching its decision in Amaya, the Second District Court emphasized that an unloaded firearm was not immediately accessible. According to the Second District, such an interpretation in favor of the accused was required by section 790.25(5)'s language mandating that it be liberally construed in favor of the lawful use, ownership, and possession of firearms.
Relying on Amaya, the trial court in the instant case granted Ashley's motion to dismiss. On appeal, the Fourth District Court in Ashley rejected Amaya, finding that the Second District interpreted the statute too liberally. In reaching that conclusion, the Fourth District Court relied on this Court's decision in Bentley v. State, 501 So.2d 600 (Fla. 1987), where we held that a defendant could be convicted of aggravated assault with a firearm even though the firearm was not loaded. Under the circumstances of that case, we determined that it was irrelevant as to whether the gun was loaded or whether ammunition was available. Based on Bentley, the Fourth District concluded that "an unloaded firearm may indeed be `readily accessible *296 for immediate use' as used in section 790.25(5)." Ashley, 601 So.2d at 1232.
Judge Dell dissented in Ashley, stating that the majority had ignored the legislative directive that subsection 790.25(5) be liberally construed in favor of the lawful use of firearms. Judge Dell also found the majority's reliance on Bentley to be misplaced. Judge Dell concluded that the use of a firearm in Bentley was distinguishable from the instant case because, unlike the offense proscribed here, the offense for which the defendant was charged in Bentley involved a conviction requiring a minimum mandatory sentence for use of a firearm.
In Alexander v. State, 477 So.2d 557, 559 (Fla. 1985), we construed the language of section 790.25(5) that reads "or is otherwise not readily accessible for immediate use." In Alexander, we determined that the legislature's use of the words "or is otherwise" clearly indicated that its primary objective in creating that section was to exempt firearms not "readily accessible for immediate use." Consequently, to resolve the conflict presented between Ashley and Amaya, we must determine: (1) whether an unloaded, concealed firearm contained in a motor vehicle where no ammunition is found is not "readily accessible for immediate use" under the exception provided under section 790.25(5); and (2) whether the presence of ammunition in the vehicle removes the firearm from that exception.
The State asks that we find against the accused under either issue based on its contention that, like the situation in Bentley, a firearm need not even be operable in order to be accessible for immediate use. We disagree.
As reflected by section 790.001(15), the legislature has determined that a firearm or other weapon is "readily accessible for immediate use" when it is "carried on the person or within such close proximity and in such a manner that it can be retrieved and used as easily and quickly as if carried on the person." The intent of the legislature in the statutory scheme at issue is distinguishable from the legislative intent behind section 775.087(2), Florida Statutes (1983), the statute at issue in Bentley, because the latter provides no exception for a firearm not "readily accessible for immediate use." As previously indicated, the legislature has directed that the exception contained within section 790.25(5) for a firearm not readily accessible for immediate use "shall be liberally construed in favor of the lawful use, ownership, and possession of firearms and other weapons."
Applying this liberal construction to the first issue, we find that a firearm is not readily accessible for immediate use within the meaning of the statutory scheme set forth in sections 790.01(2) and 790.25(5) when no ammunition is found in the vehicle. A firearm might be retrievable under such circumstances, but it certainly could not be "used," much less used "easily and quickly," within the meaning of the statute. Consequently, we reject the State's position as to this issue.
The second question, however, is more difficult and fact specific. In Amaya, the firearm was concealed under the passenger's seat and its clips and bullets were lying separately in open view on the passenger's seat. Under those factual circumstances, even giving section 790.25(5) a liberal interpretation in favor of the accused, we find that the concealed firearm was readily accessible for immediate use. The location and accessibility of the firearm and ammunition placed the firearm "within such close proximity ... that it [could] be retrieved and used as easily and quickly as if carried on the person," thus making the concealed firearm "readily accessible for immediate use." If the ammunition had not been so easily accessible, we might have reached a different conclusion. Consequently, we disapprove Amaya, and we hold that the issue of whether the presence of ammunition in a vehicle takes a firearm out of the exception in section 790.25(5) must be determined factually on a case-by-case basis.
For the reasons expressed, we quash the decision of the district court in Ashley, disapprove the decision of the Second District in Amaya, and remand this case to the Fourth District Court with directions that it *297 affirm the order of dismissal entered by the trial court in this cause.
It is so ordered.
BARKETT, C.J., and McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Art. V, § 3(b)(3), Fla. Const.